Filed 6/3/25  P. v. Jenks CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES JENKS,<br><br>    Defendant and Appellant. | G062682<br><br>(Super. Ct. No. M-10842-1)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant James Jenks is civilly committed as a sexually violent predator (SVP) under the Sexually Violent Predators Act (Welfare and Institutions Code[1] section 6600 et seq.; SVPA). Jenks petitioned for conditional release, which the trial court denied after a hearing. On appeal, Jenks argues his federal due process rights were violated because, under section 6608, subdivision (k), the burden was placed on him to prove by a preponderance of the evidence that he should be conditionally released. We conclude this argument was forfeited, and in any event, it is unavailing. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2016, a jury found Jenks to be an SVP.[2] A panel of this court affirmed the judgment on appeal. (*People v. Jenks* (Dec. 11, 2018, G054203) [nonpub. opn.].)

In January 2020, Jenks filed a petition for conditional release pursuant to section 6608. The trial court held a hearing on the petition, during which multiple witnesses testified. The parties presented conflicting evidence at the hearing regarding whether Jenks was suitable for conditional release. For example, Dr. Stephen Davis testified Jenks was suitable for

---

[1] All undesignated statutory references are to this code.

[2] In his opening brief on appeal, Jenks says the jury trial regarding his SVP commitment occurred in 2006. Although the People petitioned to have Jenks committed as an SVP in 2006, Jenks's commitment trial did not occur until 2016.

conditional release, but Dr. Robert Cureton,[3] Dr. Koreen Hudak, and Dr. Sherri Pina-Tanferani testified Jenks was not suitable for conditional release.

Following the hearing, the trial court denied the petition, concluding Jenks had not established by a preponderance of the evidence that he should be conditionally released. The trial court encouraged Jenks "to continue working on [his] program because [he] ha[s] made tremendous progress and [he is] very close."

## DISCUSSION

### I.

#### BACKGROUND REGARDING THE SVPA

The SVPA "'allows for the involuntary [civil] commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms.' [Citation.] A person can only be civilly committed if, after a trial, a judge or a

---

[3] Cureton is the clinical director of Liberty Healthcare CONREP. Cureton testified Liberty Healthcare CONREP is responsible for supervising SVPs who are conditionally released into the community. Liberty Healthcare is the only entity providing conditional release for men who have been committed as SVPs. Cureton estimated, during his four years as the clinical director of Liberty Healthcare CONREP, about ten individuals have been released into Liberty Healthcare CONREP, no individual has successfully completed the Liberty Healthcare CONREP program, and five individuals have returned to the hospital. Cureton said 52 men have been conditionally released since the start of Liberty Healthcare CONREP. Certain testimony by Cureton also appears to indicate no individual has completed the Liberty Healthcare CONREP program since its inception.

unanimous jury finds beyond a reasonable doubt the person is [an SVP].[4] [Citations.] If the person is found to be an SVP, the court orders them committed to the State Department of State Hospitals (DSH) 'for an indefinite term . . . for appropriate treatment and confinement in a secure facility.'" (*Price v. Superior Court* (2024) 105 Cal.App.5th 1210, 1213–1214 (*Price*).)

"'Because the SVPA is designed to ensure a committed person does not remain confined any longer than he or she qualifies as [an SVP], it provides means for that individual to obtain review of his or her mental condition to determine if civil confinement is still necessary. [Citation.] One of two ways such review may be had is by petition for *conditional release* . . . under section 6608.'" (*Price, supra*, 105 Cal.App.5th at p. 1214.) "Under the [SVPA], an SVP is suitable for conditional release to a less restrictive alternative (typically, placement in the community rather than the secure facility where he or she has been housed as an SVP) if he or she is no longer 'a danger to the health and safety of others' because it is not 'likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under the supervision and treatment in the community.'" (*People v. Peyton* (2022) 81 Cal.App.5th 784, 797 (*Peyton*).)

"The applicable procedures and standards for assessing whether conditional release is appropriate vary, depending on the findings of the [DSH's] annual evaluation." (*Peyton, supra*, 81 Cal.App.5th at p. 797.) "If the

---

[4] An SVP "means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

[DSH's] annual evaluation indicates that the SVP is suitable for conditional release because such release is 'in the best interest' of the SVP and 'conditions can be imposed that adequately protect the community,' then the Director or the SVP may file a petition for conditional release under section 6608. [Citations.] In light of the Director's proconditional release evaluation, the SVP is presumptively entitled to conditional release and *the state* bears the burden of showing, by a preponderance of the evidence, that 'conditional release is not appropriate.'" (*Ibid.*)

"By contrast, if the [DSH's] annual evaluation indicates that the SVP is *not* suitable for conditional release, the SVP may nonetheless file a petition under section 6608. [Citation.] In this scenario, the trial court must obtain the Director's then-current recommendation regarding the SVP's suitability for conditional release. [Citation.] The court then makes an initial assessment as to whether the petition is 'frivolous' [citation], which asks whether the petition "'indisputably has no merit'" because 'any reasonable attorney would agree that the petition on its face and any supporting attachments [a]re totally and completely without merit' [citations.] If not frivolous, the matter can proceed to a hearing, where the SVP bears the burden of showing, by a preponderance of the evidence, that conditional release is appropriate." (*Peyton, supra*, 81 Cal.App.5th at pp. 797–798, fn. omitted; see also § 6608, subd. (k) ["the committed person shall have the burden of proof by a preponderance of the evidence, unless the report required by [s]ection 6604.9 determines that conditional release to a less restrictive alternative is in the best interest of the person and that conditions can be imposed that would adequately protect the community, in which case the burden of proof shall be on the state to show, by a preponderance of the evidence, that conditional release is not appropriate"].)

5

## II.

## JENKS'S CONSTITUTIONAL ARGUMENT

The parties agree Jenks had the burden of proving by a preponderance of the evidence conditional release was appropriate under section 6608, subdivision (k). On appeal, Jenks argues placing the burden of proof on him, pursuant to section 6608, subdivision (k), "violated federal due process of law under the facts of this case."

In *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee*), the California Supreme Court rejected the defendant's argument that it violated federal due process to require the defendant, after his initial commitment, to prove by a preponderance of the evidence he is no longer an SVP. (*Id.* at p. 1191.) Jenks says he "acknowledges this Court is likely to follow that decision" and "raises this due process claim to preserve his right to petition the California Supreme Court to reconsider it and for federal habeas corpus review." However, Jenks also asserts *McKee* did not resolve his argument because he is asserting an as-applied constitutional challenge.

"An as-applied constitutional challenge is forfeited unless previously raised." (*People v. Patton* (2019) 41 Cal.App.5th 934, 946; see also *Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1143.) Jenks does not dispute his counsel failed to raise his as-applied constitutional challenge at the hearing. Rather, in an attempt to avoid forfeiture, Jenks makes several arguments, none of which is persuasive. He says an objection in the trial court would have been "useless because of section 6608, subdivision (k), and the trial court was not going to place the burden on the government given the holding of" *McKee*. However, we do not conclude Jenks was excused from raising his challenge in the trial court because, according to Jenks, he is asserting an as-applied constitutional challenge not resolved by *McKee*. Thus,

6

we find Jenks forfeited his as-applied constitutional challenge by failing to raise it at the hearing.

Jenks also contends his argument on appeal raises a pure issue of law but he relies on his characterization of purported facts regarding the strength of his case and the rate of release to Liberty Healthcare CONREP.[5] Jenks also argues we should exercise our discretion to review his challenge because it impacts the fundamental validity of the order and involves an important issue. However, even if we were to exercise our discretion, we conclude his challenge is unavailing.

In *McKee*, our California Supreme Court deemed a civil commitment to be "constitutional so long as it is accompanied by the appropriate constitutional protections." (*McKee, supra*, 47 Cal.4th at p. 1188.) In so holding, the *McKee* court noted, "'[s]tates have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. [Citations.] . . . It . . . cannot be said that the involuntary

---

[5] Jenks says "[t]he statistical evidence supports the conclusion that SVPs are being denied a reasonable opportunity to seek conditional release." Jenks asserts 52 men "have been conditionally released into CONREP since the start of the SVP program," "[a]bout 10 people have been admitted to CONREP during the four years Cureton has been the director," "[n]obody has successfully completed the CONREP program," and "[f]ive patients have been returned to the hospital." According to Jenks, "[c]ommitment as a sexually violent predator is more akin to a sentence of life without the possibility of parole than it is to a civil commitment which is limited in time to the necessity for the commitment." However, by failing to raise his constitutional challenge at the hearing, Jenks has not fully developed his statistical evidence and analysis. For example, Jenks does not explain how many individuals have been found to be SVPs, how many individuals have sought conditional release but had their petitions denied, and how many individuals have been unconditionally released.

civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty.'" (*Ibid*.) However, "'[a] finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment.'" (*Ibid*.) Instead, civil commitment statutes have been sustained "'when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality."'" (*Ibid*.)

In *McKee*, the defendant was found to be an SVP and committed for an indeterminate term under the SVPA. (*McKee, supra*, 47 Cal.4th at pp. 1184–1185.) The defendant argued his federal due process rights were violated because his commitment was indefinite and he had the burden to show by a preponderance of the evidence that he is no longer an SVP. (*Id*. at p. 1188.) In rejecting defendant's due process challenge, our high court reasoned the defendant "has already been found not only to have previously committed the requisite criminal acts but was found beyond a reasonable doubt to have 'a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.'" (*Id*. at p. 1191.) Such findings "greatly diminished" the danger recognized in prior cases "'that members of the public could be confined on the basis of "some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable"' or 'for mere "idiosyncratic behavior."'" (*Ibid*.) Consequently, the court in *McKee* concluded "the requirement that [defendant], after his initial commitment, must prove by a preponderance of the evidence that he is no longer an SVP does not violate due process." (*Ibid*.)

Jenks attempts to distinguish *McKee* by pointing to the purported rate, noted *ante*, at which SVPs are released to the Liberty Healthcare CONREP program and asserting he presented a "strong" case. Although *McKee* did not expressly address these arguments, we do not conclude these arguments justify diverging in this case from *McKee*'s conclusion due process was not violated. Having concluded Jenks's arguments to distinguish *McKee* are unavailing here, we must follow *McKee*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## DISPOSITION

The postjudgment order is affirmed.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

9